IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

In re the Matter of:

MICHELLE DIANE VINCENT, *Petitioner/Appellee,*

*v.*

JEFFREY DANIEL NELSON, *Respondent/Appellant.*

No. CV 14-0541 FC
FILED 8-20-2015

Appeal from the Superior Court in Maricopa County
No. FC2008-053239
The Honorable Jay M. Polk, Judge

**AFFIRMED**

COUNSEL

Riggs, Ellsworth & Porter, P.L.C., Show Low
By Michael R. Ellsworth
*Counsel for Petitioner/Appellee*

The Owsley Law Firm, PLLC, Avondale
By Carlie Owsley Walker
*Counsel for Respondent/Appellant*

**OPINION**

Judge John C Gemmill delivered the opinion of the Court, in which Presiding Judge Michael J. Brown and Judge Randall M. Howe joined.

**G E M M I L L**, Judge:

¶1          This is a family court relocation case. In *Thompson v. Thompson*, 217 Ariz. 524 (App. 2008), this court addressed how the 100-mile distance in Arizona Revised Statutes ("A.R.S.") section 25-408(A)(2) should be calculated. In this opinion, we again consider the 100-mile provision in § 25-408(A)(2).

¶2          Jeffrey Nelson ("Father") appeals the family court's ruling rejecting his challenge to a relocation by Michelle Vincent ("Mother") with their children. He also appeals the court's denial of his request for a modification of prior parenting time and legal-decision making orders. We affirm.

## BACKGROUND

¶3          In November 2008, Mother filed a dissolution of marriage petition with minor children in Maricopa County Superior Court. During a resolution management conference in January 2009, Mother informed the court she intended to move to Payson or Heber. At the time, both parents resided in Phoenix, and temporary orders for custody and parental visitation were in place. The court informed Mother that under A.R.S. § 25-408, she could not relocate the children more than 100 miles from her address in Phoenix without Father's agreement or the court's approval. During the resolution management conference, the parents and the court engaged in discussion regarding the distance between Phoenix and Heber and between Phoenix and Payson. After Mother was made aware that Payson was less than 100 miles from Phoenix and Heber was more than 100 miles from Phoenix, she informed the court she would move to Payson. The court encouraged the parents to reach an agreement on the relocation, but if they could not, the court indicated it would make the decision.

¶4          At the dissolution trial on May 15, 2009, the parents informed the court they were unable to reach an agreement on relocation. Mother told the court that she was moving to Payson and did not intend to remain in Phoenix. Mother explained that she had already acquired a job and an apartment in Payson and that her Phoenix lease would end soon. The family court noted that Payson was approximately 95.23 miles from Mother's current zip code in Phoenix; that the children's quality of life would improve in Payson; that Mother had extended family in Payson; that she had the opportunity to earn more money in Payson than in Phoenix; and that rent was lower in Payson. The court then summarized its decision:

> I'm [going to] let mom go to Payson with the children. I think
> that's in the children's best interest. She's been their primary
> caretaker. She's been a stay at home mom and at least, at this
> point with their ages, I think it's in their best interest.

¶5            In a decree filed May 29, 2009, the family court granted the dissolution of marriage. The court awarded joint legal decision-making to the parents and designated Mother as the primary physical custodian, with the children to reside with Mother at all times except during the parenting time awarded to Father. The decree was silent regarding relocation. Approximately a week after the May 29, 2009, decree was issued, Mother filed a change of address form reporting that she had moved from Phoenix to Payson.

¶6            From 2009 until 2013, Mother moved several times. In October 2009, she moved to Mesa for a limited time due to having a high-risk pregnancy. In December 2009, venue for the case was changed from Maricopa County to Gila County. In approximately August 2010, Mother moved to Heber. In 2012, she moved to Lakeside and petitioned to have venue changed from Gila County to Navajo County. Father, who lived in Maricopa County, objected and petitioned the court to transfer venue back to Maricopa County, which the court granted. In March 2013, Father filed a modification petition. Just before a hearing set for August 2013, Father filed an amended pretrial statement in which he argued for the first time that A.R.S. § 25-408 should be invoked to disallow Mother's move to Lakeside.[1] The hearing was continued to March 2014.

¶7            At the March 2014 evidentiary hearing, the family court received testimony and exhibits, including the transcript from the May 2009 dissolution trial, and the parents' arguments. The court issued a comprehensive 21-page ruling in April 2014, finding that Mother's relocation to Payson in 2009 was authorized by the family court in an oral pronouncement from the bench in May 2009, and, regarding Mother's move to Lakeside, the provisions of A.R.S. § 25-408 were inapplicable because Lakeside is less than 100 miles from Payson. The court further found that Father failed to demonstrate a material change in circumstances affecting the children's welfare. Additionally, the court made best interest findings in accordance with A.R.S. §§ 25-403 and -408 and issued orders regarding legal-decision making, parenting time, and the appointment of a parenting

---

[1] We are not presented in this appeal with any issue regarding the potential waiver by inaction of the restrictions of A.R.S. § 25-408(A).

coordinator.  Finally, the court granted Mother an award of attorney fees, finding that Father was unreasonable in raising the relocation challenge just two days before a hearing.  The court also ordered venue transferred to Navajo County. Father timely appeals, and we have jurisdiction under A.R.S. § 12-2101(A)(1).

## ANALYSIS

### I.     Relocation

¶8          Father argues that A.R.S. § 25-408(A)(2) was applicable to Mother's move to Lakeside.  He contends the court should have measured the mileage from Phoenix, where Mother resided when the May 2009 decree was issued, to Lakeside, where Mother now lives, resulting in a distance substantially exceeding 100 miles and triggering the provisions of A.R.S. § 25-408.  This appeal presents a question of statutory interpretation that we review de novo. *Thompson*, 217 Ariz. at 526, ¶ 7.

¶9          We must consider and apply subsections (A) and (D) of A.R.S. § 25-408[2]:

> A.  If by written agreement or court order both parents are entitled to joint legal decision-making or parenting time and both parents reside in the state, at least forty-five days' advance written notice shall be provided to the other parent before a parent may do either of the following:
>
> 1.  Relocate the child outside the state.
>
> 2.  *Relocate the child more than one hundred miles within the state.*
>
> . . .
>
> D.  Subsection A of this section does not apply if provision for relocation of a child has been made by a court order or a written agreement of the parties that is dated within one year of the proposed relocation of the child.

(Emphasis added.)

---

[2] This statute was amended in 2015, but the changes are not material to the issues in this case.

¶10　　　　At the time of Mother's moves to Payson and later to Lakeside, there was a court order in place entitling both parents to custody or parenting time, thereby satisfying the initial requirement for application of § 25-408(A). As this court pointed out in *Thompson*, the legislature by enacting these provisions was balancing the competing interests of allowing a parent "some unrestricted flexibility to decide where to live with his or her child" with limits on the ability of a parent to "interfere with the custody or parenting time granted to the other parent by relocating with the child and making it more difficult and costly for the non-relocating parent to have custody or parenting time with the child." 217 Ariz. at 527, ¶ 14.

¶11　　　　The *Thompson* court interpreted A.R.S. § 25-408 in a situation similar to this case.[3] *Id.* at 525–26, ¶¶ 2–11. The mother in *Thompson* lived in Alpine, and told the court that she wanted to move with the parties' minor children to Show Low. *Id.* at 525, ¶ 2. The court approved the mother's relocation in a temporary order that also established custody and visitation. *Id.* Before the issuance of a final decree, the mother relocated with the children to Show Low. *Id.* at 525, ¶ 3. Sometime after the court entered the final decree, she notified the court she intended to move from Show Low to Payson. *Id.* The father objected to the relocation to Payson and argued that § 25-408(A) required the court to calculate the mileage of the mother's relocation by adding the miles of her first move — from Alpine to Show Low — to the miles of the second move — from Show Low to Payson — a total distance that exceeded 100 miles. *Id.* at 525, ¶ 4. *Thompson* held that subsection (A) did not apply to the first move because the court approved the mother's relocation with the children and the mother actually moved within one year of the court's approval. *Id.* at 525–26, ¶¶ 2–11. When subsection (D) renders subsection (A) inapplicable, the miles of the court-authorized relocation are exempt from future calculations under subsection (A). *Id.* at 526, ¶ 11.

¶12　　　　The facts of this case are similar, but not identical, to the facts in *Thompson*. Here, Mother's first move — from Phoenix to Payson — was

---

[3] When *Thompson* was decided in 2008, the subsections of A.R.S. § 25-408 were numbered differently than they are presently because a subsection has since been removed. *See* 2012 Ariz. Sess. Laws, ch. 309 (S.B 1127) (2nd Reg. Sess.). The pertinent subsections referred to in *Thompson* and in this decision are similar, and in this opinion we cite the subsections as they currently exist in the statute.

authorized by the family court in 2009.[4]   Unlike the mother in *Thompson*, however, Mother in this case did not move before the issuance of the May 2009 decree.   Father contends that we should apply literally the *Thompson* court's language that § 25-408(A) "should be construed as allowing a parent granted joint custody or parenting time the right to move up to 100 miles from that parent's physical location with the child *as of the date of the written agreement or court order entitling both parents to custody or parenting time*."   *Id.* at 527, ¶ 14 (emphasis added).   Because Mother and the children still resided in Phoenix on the day the decree was issued, a literal application of the *Thompson* court's language would negate the effect of court approval of Mother's move from Phoenix to Payson and the application of § 25-408(D) to exempt the miles of this first move from future calculations. Accordingly, under Father's argument, the 100-mile provision of § 25-408(A)(2) would be applicable when Mother relocated to Lakeside because Lakeside is more than 100 miles from Phoenix.

¶13        Although Mother's address of record on the day the decree was issued was in Phoenix, we conclude that the language of *Thompson* must be understood in light of the facts in that case.   The *Thompson* court presumably focused on the mother's address at the time of the decree, because the mother's first move in that case had been both approved by the court *and completed before the decree*.   On the facts of this case, however, the statutory language of § 25-408—particularly subsection (D)—and the logic of *Thompson* support the conclusion that the distance from Phoenix to Payson should be exempted from the 100-mile calculation under A.R.S. § 25-408(A)(2).   *See Thompson,* at 526, ¶ 10 (concluding that "[m]other's first move met the criteria of subsection [D] and so subsection [A] did not apply to that move.   When, as here, subsection [D] exempts a move from subsection [A], the miles of the exempted move should not be included within subsection [A]'s 100 mile condition.").

¶14        Subsection 25-408(D) provides a one-year time limit for approved relocations to be completed, and Mother's move in 2009 to Payson was promptly accomplished.   Although Father argues for a literal application of certain language from *Thompson*, we do not think that the fact that Mother completed the approved relocation from Phoenix to Payson approximately a week after the decree was entered—rather than before entry of the decree—should be dispositive.   Mother's move to Payson was approved by the court and timely completed in accordance with A.R.S. §

---

[4] The oral pronouncement of the family court on May 15, 2009, *see supra* ¶ 4, constituted a court order within the meaning of A.R.S. § 25-408(A) and (D).

25-408(D). Accordingly, under A.R.S. § 25-408 and *Thompson*, the family court correctly determined that the mileage from Phoenix to Payson is exempted from future calculations under § 25-408. In essence, the "starting point" for application of § 25-408(A)(2) in the future became Mother's address in Payson.

¶15 The family court did not err in ruling that because the distance from Payson to Lakeside was less than 100 miles, the limitations of A.R.S. § 25-408 did not apply. Father's relocation challenge was appropriately rejected.[5]

## II. Modification

¶16 Father argues the family court erred in finding no material change in circumstances warranting a modification of court-ordered parenting time and legal-decision making. Father contends that the family court did not properly consider Mother's alleged "divorce decree violations" and Mother's relocation as evidence of a material change in circumstances. We disagree.

¶17 To change a previous custody order, the family court must determine that there has been a "material change in circumstances affecting the welfare of the child." *Canty v. Canty,* 178 Ariz. 443, 448 (App. 1994). This court will not disturb the family court's decision absent a clear abuse of discretion. *In re Marriage of Diezsi,* 201 Ariz. 524, 525, ¶ 3 (App. 2002). We view the evidence in the light most favorable to sustaining the family court's findings, and we also determine whether evidence in the record reasonably supports the family court's findings. *Hurd v. Hurd*, 223 Ariz. 48, 52, ¶ 19 (App. 2009) (citing *Ariz. Dep't of Econ Sec. v. Burton*, 205 Ariz. 27, 30, ¶ 14 (App. 2003)).

¶18 In its April 2014 ruling, the family court denied Father's requests for a modification and specifically found that "Father has failed to demonstrate that a material change in circumstance affecting the Children's welfare has occurred since the" May 2009 orders. The record indicates that Mother and Father presented evidence about Mother's alleged violations of the decree and her relocation to Lakeside. The family court found Mother

---

[5] In *Thompson*, this court noted that it "need not decide whether subsection [A] applies when a parent makes serial non-court approved relocations that individually are less than 100 miles but, in the aggregate, total more than 100 miles." 217 Ariz. at 526, ¶ 11 n.4. Similarly, the issue of potential "serial non-court approved relocations" is not addressed in this opinion.

and her witnesses to be more persuasive in their testimony than Father and his witnesses, a finding that is significant. Although Father argues the family court did not properly consider the evidence before it, the record reveals the family court carefully and comprehensively considered the evidence and issues. Moreover, the family court is in the best position to judge the credibility of witnesses and resolve conflicting evidence, and appellate courts generally defer to the findings of the family court. *See Goats v. A.J. Bayless Mkts., Inc.*, 14 Ariz. App. 166, 169, 171 (App. 1971). We conclude that the record and the law support the findings and conclusions of the family court in denying Father's requested changes in parenting time and legal decision-making.

### III.    Attorney Fees

**¶19**        Mother requests an award of attorney fees on appeal under A.R.S. § 25-324. She argues that the court is required to award attorney fees when a petition is not filed in good faith and was not grounded in fact or law. Having considered the factors set forth in A.R.S. § 25–324 and in the exercise of our discretion, we deny Mother's request for an award of fees. As the prevailing party on appeal, Mother is entitled to an award of taxable costs incurred on appeal upon her compliance with Arizona Rule of Civil Appellate Procedure 21.

### CONCLUSION

**¶20**        Finding no abuse of discretion or legal error, we affirm the family court's rulings.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama